IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

UNITED STATES OF AMERICA, *ex rel.*, BRENT MCNUTT,

    Plaintiff,

v.

HALEYVILLE MEDICAL SUPPLIES, INC., et al.,

    Defendants.

CIVIL ACTION NO.

01-AR-3156-J

**MEMORANDUM OPINION**

    The original *qui tam* complaint filed by Brent McNutt, as *relator*, has been merged into the complaint-in-intervention filed by the United States. Therefore, defendants' motion to dismiss or for a more definite statement is addressed only to the complaint-in-intervention. Comprehensive briefs have been filed and, at the court's suggestion, supplemented by both sides.

    The United States invokes the False Claims Act, seeking to recover monies allegedly obtained by defendants as Medicare reimbursements for medical supplies sold by defendants to patients who had been procured by defendants' illegal payment of kickbacks to the entities who referred the patients to defendants. The United States adds what it hopefully characterizes as federal common law or non-statutory causes of action seeking basically the same relief.

    The action was filed on December 10, 2001. There has been no



effort thus far to amend the complaint to seek recovery for any conduct that occurred after December 10, 2001. Nevertheless, as part of its submission in defense of the motion to dismiss, the United States has attached one or more forms executed by one or more of the defendants after December 1, 2001. These forms were and are used for enrolling Medicare suppliers. The language in the form has evolved over time, but perhaps not in such a way as to affect this case. Using the various enrollment forms defendants acknowledged from time to time their understanding that payment to a Medicare supplier would take place only upon the assumption by the payor that the payee-supplier had complied with all of Medicare's expectations. The pertinent language in the form that was actually employed by defendant, Frances A. Burleson, on February 10, 2004, reads as follows:

> I agree to abide by the **Medicare laws, regulations, and program instructions** applicable to DMEPOS suppliers. The Medicare laws, regulations, and the program instructions are available through the Medicare contractor. I **understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions (including, <u>but not limited to</u>, the Federal anti-kickback statute and the Stark Law)**, and on the supplier's compliance with all applicable conditions of participation in Medicare.

(emphasis and double emphasis supplied).

The core argument of the United States in opposition to defendants' motion to dismiss is encapsulated at page 22 of its brief, which says:

2

> We submit that the better view is that compliance with the AKS [Anti Kickback Statute] is a condition of payment, and that a defendant who pays a kickback in violation of the AKS to obtain a referral is not entitled to be paid for that referral. **Because the AKS is a prerequisite to payment, a defendant who seeks payment under Medicare for claims that violate the AKS is liable under the FCA [False Claims Act].**

(emphasis supplied).

The unusual concept inherent in this contention is "implied fraud", in contrast to fraud as it has traditionally been understood. The United States could just as easily assert that a violation of any one of the myriad "Medicare laws, regulations, and program instructions" constitutes fraud in violation of the False Claims Act if the violation occurred prior to the supplier's requesting payment from Medicare. Perhaps a distinction between a violation of the Anti-Kickback Statute and violations of some of the other "Medicare laws, regulations or program instructions" can be made on the basis of their relative degrees of materiality as possible inducements to Medicare payors, but the built-in assumption of compliance with **all** "Medicare laws, regulation and program instructions" is the same, no matter which of the "Medicare laws, regulations or program instructions" the supplier has failed to observe before he, she or it submits a voucher. The enrollment form, while expressly warning suppliers not to violate "the Federal anti-kickback statute and the Stark law", **just as expressly does not limit the warning to those two laws**. Who is to decide what is

3

so material as to expose one to a fraud claim?  If one of the purposes of the United States in drafting its enrollment form and in intervening in *qui tam* suits like this one is to discourage people from becoming Medicare suppliers, it may succeed, especially if it wins a few.

If this court were writing on an unscarred blackboard, it would agree with John T. Boese and Beth C. McClain, who wrote the article entitled "Why *Thompson* is Wrong: Misuse of the False Claims Act to Enforce the Anti-Kickback Act", 51 Ala. L. Rev. 1 (1999). The writers were criticizing *United States, ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F. 3d 899 (5th Cir. 1997), the Fifth Circuit decision upon which the United States builds its case.  After the Fifth Circuit's *Thompson* opinion, and after the Alabama Law Review article about it, the *Thompson* case, on remand to the district court, was transferred to a multi-district panel and treated with similar *qui tam* actions.  It finally was dismissed as part of an over-all settlement agreement.  It never again reached an appellate court.  No controlling opinion has been handed down by the Supreme Court or by the Eleventh Circuit.  These are the only courts that bind this court.  The *Thompson* opinion is no more binding than the well written lower court opinion that was reversed by *Thompson*.  See *United States, ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 938 F. Supp. 399 (S.D. Tex. 1996).

It appears that a majority of the very few courts that have considered the question here presented to this court have agreed with the theory here espoused by the United States, namely, that the United States and its relators can transmogrify a violation of the criminal Anti-Kickback Statute into a civil violation of the False Claims Act by the expedient of linking the two.  If the courts which express this view are correct, and if the Alabama Law Review article is incorrect when it says that such a bootstrap operation was never contemplated by the False Claims Act, no one can argue against the proposition that follows, namely, that when the United States alleges that the Anti-Kickback Statute was violated, it undertakes to prove that the defendants committed the criminal act described in that statute.  Criminal conduct must be proven beyond a reasonable doubt.  The commission of a crime cannot be proven by a preponderance of the evidence.  This constitutional fact complicates things.  To try a case with differing burdens of proof for separate essential elements will be a challenge for judge and jury.

What, if any, effect *Blakely v. Washington*, 542 U.S. \_\_\_\_ (2004), has on this case is anybody's guess.  It now seems clear that a majority of the Supreme Court is not willing to expose individuals indirectly to criminal penalties based on facts not determined by a jury.  The question for this case is not so much whether the requisite violation of the Anti-Kickback Statute has to

5

be proven to a jury, and by what burden of proof, in order to obtain a verdict, but whether defendants, in order to defend themselves in a civil case, must give up their Fifth Amendment privilege against self-incrimination. After all, the statute of limitations may not have run on all of defendants' alleged criminal acts. As already pointed out, things can get complicated.

Under the United States' theory of this case, a criminal prosecution for a violation of the Anti-Kickback Statute may be barred by the statute of limitations and still form a basis for a civil False Claim Act case. A Medicare payment could theoretically have been fraudulently induced by a supplier's implied representation that no kickback violation had ever occurred, even twenty years ago. The courts, of course, may decide to manufacture a limitation on the concept of implied representation to those kickbacks that took place recently enough not to be barred by the anti-kickback statute of limitations, but such an innovation would run smack into the Fifth Amendment again.

Because the Eleventh Circuit has not spoken on the question of whether the allegation of a violation of the Anti-Kickback Statute can form a basis for invoking the False Claims Act, and because the answer to that question will be dispositive in this case, the court will entertain a request by defendants within 10 days to certify the question for interlocutory appeal to the Eleventh Circuit pursuant to 28 U.S.C. § 1292(b). Meanwhile, however, an order will

be entered overruling defendants' motion to dismiss and defendants' alternative motion for a more definite statement. The court believes that the complaint makes sufficiently plain what the United States is complaining about. The court also finds that it has jurisdiction over the so-called common law claims, even if the False Claim Act count should fall by the wayside.

DONE this  2nd  day of July, 2004.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE